IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GRANT PUTNAM,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:24-CV-1657-L** |
| | § | |
| **BLUE SPRIG PEDIATRICS, INC.,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are the following motions: Defendant's Motion for Summary Judgment (Doc. 19), filed July 21, 2025; and Plaintiff's Motion for Leave to File Surreply (Doc. 23), filed August 27, 2025. Defendant's Motion for Summary Judgment **only** addresses Plaintiff's claims for alleged violations of the Americans with Disabilities Act ("ADA"), **and should have been filed as a motion for partial summary judgment**. For the reasons herein explained, the court **grants** Defendant's Motion for Summary Judgment (Doc. 19); **denies** Plaintiff's Motion for Leave to File Surreply (Doc. 23); **dismisses with prejudice** Plaintiff's ADA claims; and **declines** to exercise supplemental jurisdiction over any state law claims that Plaintiff intended to bring in this action under the Texas Labor Code.

## I.    Factual and Procedural Background

Grant Putnam ("Plaintiff" or "Mr. Putnam") brought this employment action against his former employer Blue Sprig Pediatrics, Inc. ("Defendant" or "Blue Sprig") on July 1, 2024.  Mr. Putnam alleges that Blue Sprig violated the ADA, 42 U.S.C. §§ 12101, *et seq.*, and its State of Texas equivalent, Tex. Lab. Code § 21.051, *et seq.* by: (1) discriminating against him based on his

disability and failing to provide him with a reasonable accommodation; (2) exposing him to a hostile work environment; and (3) retaliating against him after he resigned.[1]

Mr. Putnam, who was diagnosed with Asperger's Syndrome in 2016 at the age of 32, was hired as a Registered Behavioral Therapist or Technician ("RBT") in early June 2021 on an at-will basis by Blue Sprig, which provides applied behavioral analysis and therapy to young children with autism. When he applied to work for Blue Sprig, Mr. Putnam disclosed to Blue Sprig Clinical Director Lyssa Rae Miller and Operations Manager Anusha Sadruddin that he had autism. Mr. Putnam did not request any specific type of accommodation for his condition at that time but indicated that he *might* need some additional supervision and help in the form of adjustments during the training process. Despite his condition, Mr. Putnam believed that he could use his experience as someone living with autism or Asperger's to help improve the lives of children with autism.

Before interacting with any of the children at Blue Sprig, Mr. Putnam was required to complete approximately 20 to 25 hours of in-home training that consisted of viewing slide shows and completing quizzes on the internet. He then submitted paperwork to Blue Sprig, confirming that he had completed this portion of his training. Successful completion of this in-home training was a prerequisite for Mr. Putnam to obtain his RBT certification, which could only be accomplished through the sponsorship of an employer like Blue Sprig. Obtaining his RBT certification within 45 days from his start date (and maintaining his RBT certification) was one of

---

[1] Plaintiff only references the Texas Labor Code once in passing in the section of his Complaint dealing with jurisdiction, venue, and service of process. In this regard, he alleges: "This Court has federal jurisdiction under 28 U.S.C. § 1331, *et seq.*, because the claims brought herein arise under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, and its State of Texas equivalent, Tex. Lab. Code § 21.051, *et seq.* ('the Statutes' or 'ADA')." Doc. 1 ¶ 2.1. In actuality, the court, as herein explained, has original jurisdiction over Plaintiff's ADA claims and supplemental jurisdiction over any state law claims asserted by him in this action. The basis for any such state claims, though, is not clear because, as noted, Plaintiff's Complaint only references the Texas Labor Code once in the section of his Complaint dealing with jurisdiction, venue, and service of process.

**Memorandum Opinion and Order – Page 2**

the conditions of Mr. Putnam's continued employment at Blue Sprig. According to the employment offer letter from Ms. Sadruddin to Mr. Putnam dated June 4, 2021:

> The Company [Blue Sprig] will pay for your training and the actual BACB [the Behavioral Analysis Certification Board] assessment to become an RBT. You will have 45 days from your start date to complete this RBT training, take and pass the RBT competency assessment administered by your supervising BCBA, and take and pass the RBT exam administered by the BACB. If the exam is not taken or passed within 45 days of your start date and you are not meeting attendance or other requirements of The Company, there is a high probability that significant hours will not be available until the exam is passed and The Company requirements are met, or employment may be ended.
>
> . . . Training is considered "complete" once you have completed and passed our internal competency assessment.

Def.'s App. 32-33. Mr. Putnam's June 4, 2021 electronic signature accepting the offer of employment appears in the bottom footer of the offer letter. *See id.*

On June 12, 2021, after completing the in-home portion of his training, Mr. Putnam began the next phase of his training that involved shadowing Ms. Miller during therapy sessions with children at Blue Sprig. Mr. Putnam shadowed Ms. Miller during two therapy sessions with a seven-year-old child before working alone with the child on July 2, 2021. After his solo session with this child, Mr. Putnam sent the following text message to Ms. Sadruddin: "[I] don't think [I] am doing [the seven-year-old child] again without his mom being present." Def.'s App. 42. Mr. Putnam followed up with an e-mail to Ms. Sadruddin, stating the same thing. In response to Ms. Sadruddin's request for "more details," Mr. Putnam explained that he had attempted to use certain behavior techniques to no avail with the child, and he expressed the view that "I think there could be a motivation [on the child's part] to follow instructions with mom present." Def.'s App. 43-44.

After this, Blue Sprig removed the seven-year-old child from Mr. Putnam's schedule while Ms. Miller was on vacation. When Ms. Miller returned from vacation, she put the seven-year-old child back on Mr. Putnam's schedule, starting on July 19, 2021, but she told him that she would

accompany him during the sessions with this child until he was ready to do them alone.  Thereafter, Ms. Miller accompanied Mr. Putnam during every session with the child, but she left early on July 22, 2021, with approximately forty-five minutes of the session remaining.

When Ms. Miller left, the child was calm and behaving quietly, and another therapist and child were in the room.  After approximately five or ten minutes, the child's "tone" changed, and he began acting out by attempting to grab an iPad from the other child in the room.  Def.'s App. 20-21. Mr. Putnam intervened and removed the iPad from the seven-year-old's grasp.  The child then dropped to the floor and began crying, to which Mr. Putnam responded: "I'll give you something to cry about."  Def.'s App. 21.  The other therapist came over and tried to help.  When the seven-year-old began running towards the other child, Mr. Putnam put his arms out to block him.  The seven-year-old came into contact with Mr. Putnam's hand, stumbled backwards, and fell to the ground.  Mr. Putnam then picked the child up, took him to get his lunchbox, and walked him out of the room to his mother.

Immediately after this, Mr. Putnam gathered his own personal belongings and exited the building. As he was walking out, he passed Operations Manager Reiley Denton and another employee and stated: "See you later, this is my last day." Def.'s App. 4-5, 46-49. He did not speak with anyone else between the time he took the child to his mother and when he announced his resignation.  Later that evening, Mr. Putnam spoke on the telephone with Ms. Miller, told her that he "strongly disliked" the seven-year-old child, admitted to telling the child that he would give him something to cry about, and said that he was "[s]orry it had to end this way."  Def.'s App. 4. Approximately one week later, in response to a request by Blue Sprig, Mr. Putnam confirmed in writing that he had resigned on July 22, 2021.  Def.'s App. 5. Mr. Putnam concedes that he was not disciplined or terminated as a result of the July 22, 2021 incident, but he takes issue with Blue

Sprig's decision to report the incident to the BACB, and he disagrees that Blue Sprig was required by state law to report such incidents to the BACB.

As indicated, Mr. Putnam sued Blue Sprig approximately three years after the July 22, 2021 incident and his resignation. His ADA claims fall into three main categories: (1) discrimination based on failure to accommodate; (2) harassment-based discrimination, the ADA equivalent of a hostile work environment under Title VII; and (3) retaliation. On July 21, 2025, Blue Sprig moved for summary judgment on all of Mr. Putnam's ADA claims. On August 27, 2025, approximately one week after briefing on Blue Sprig's Motion for Summary Judgment was complete, Mr. Putnam sought leave to file a surreply to Blue Sprig's summary judgment motion.

For the reasons that follow, the court **grants** Defendant's Motion for Summary Judgment (Doc. 19) and **denies** Plaintiff's Motion for Leave to file Surreply (Doc. 23). Assuming that Plaintiff intended to assert similar employment law claims under Texas law, the court **declines** to exercise supplemental jurisdiction over such claims.

## II.    Defendant's Motion for Summary Judgment (Doc. 19)

### A.  Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make

**Memorandum Opinion and Order – Page 5**

credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are

"irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### B.    Discussion

As noted, Blue Sprig contends that it is entitled to summary judgment on all of Plaintiff's claims under the ADA. Plaintiff disagrees and contends that the following "uncontroverted facts" taken from his deposition testimony and his sworn responses to interrogatories are sufficient to raise a genuine dispute of material fact with respect to each of his ADA claims:

1.   Plaintiff was diagnosed [with] Asperger's Syndrome in 2016[] (Pl.['s] Dep[.] 35:7-37:8)[;]

2.   With full knowledge of Plaintiff's Asperger's condition, Plaintiff was offered a position as a[n] RBT and hired by Blue Sprig on or about June 4, 2021[] (Pl.['s] Dep[.] 10:23-11:9)[;]

3.   After about a week of in-home training, Plaintiff began working at a Blue Sprig center on or about June 12, 2021[] (Pl.['s] Dep[.] 8:4-12)[;]

4.   Just prior to July 2, 2021, Plaintiff shadowed [Clinical Director Lyssa Rae] Miller with a particular child who was "about seven" years old . . . for two sessions, then worked with the child alone for one session[] (Pl.['s] Dep[.] 47:9-48:4)[;]

5.   Plaintiff sent a text and follow-up email on July 2, 2021 to Ms. [Anusha] Sadruddin, stating "I don't think I am doing [the seven-year-old child] again without his mom." (Pl.['s] Dep[.] 43:22-44:21)[;]

6.   Blue Sprig then took the seven-year[-]old off Plaintiff's schedule[] (Pl.['s] Dep[.] 52:22-53:4)[;]

7.   Ms. Miller put the seven-year-old child back on Plaintiff's schedule starting July 19, 2021, but stated that she would attend the sessions with Plaintiff until he was ready to do [the child] alone[] (Pl.['s] Dep[.] 53:6-54:4)[;]

8.   Ms. Miller did attend every session with the seven[-]year-old child with Plaintiff but left with about 45 minutes left in a session on July 22, 2024. [Ms.] Miller had to leave early with 45 minutes remaining.[] At the time she left, the

child was calm. After another five or ten minutes of calm behavior, the child's "tone" changed and he began acting out[.] The child attempted to grab an iPad from another child and Plaintiff intervened, taking the iPad out of the seven[-]year-old child's grasp[] (Pl.['s] Dep[.] 54:12-79: 1)[;]

9.  After the child fell, Plaintiff resigned[] (Pl.['s] Dep[.] 90:2-10)[;]

10. Plaintiff spoke with Ms. Miller that night on the phone and confirmed what he said to Ms. Denton and that he resigned, adding that he was thankful for the opportunity and was "sorry it had to end this way[]" (Pl.['s] Dep[.] 13:13-25)[;]

11. Blue Sprig reported the incident with the seven[-]year-old child to the appropriate government agencies and the Behavioral Analysis Certification Board (BACB)[] (Pl.['s] Dep[.] 86:10-89:16)[;]

. . . .

12. Plaintiff's impairment is fully described in his Interrogatories 1, 2 and 3[([p]p[.] 1-3);]

13. Plaintiff requested a disability accommodation from Defendant [(*See* Interrog[.] No. 4, p[.]3); and]

14. Defendant created a hostile work environment and engaged in unlawful retaliation such that Plaintiff was the victim of a *constructive discharge* causing him to resign [(*See* Interrog[.] No[.] 6, 7, 8, 10, 12, 14 pp[.]4-l l)].

Doc. 20 at 10 (cleaned up).[2]

Plaintiff's thirteenth and fourteenth "uncontroverted facts" are actually conclusory legal conclusions that go to the heart of the parties' arguments, which the court addresses below. Because Plaintiff failed to comply with this district's Local Civil Rules for summary judgment briefing and evidence, the court had difficulty locating Plaintiff's evidence in the summary judgment record. In addition, it was not always apparent to the court which evidence Plaintiff was relying on because he does not identify which of the evidence referenced above supports each of his various arguments and claims, and, as reflected above, some of his citations to the summary

---

[2] Because Plaintiff's Response does not include page numbers at the bottom of each page, the court's citations are to the electronic pages assigned to each page of the Response in the header of the document.

judgment record, particularly those pertaining to interrogatories, are quite broad. In any event, it is not incumbent on the court to sift through the record to find evidence supporting Plaintiff's opposition to Defendant's Motion for Summary Judgment. *Ragas*, 136 F.3d at 458; *Skotak*, 953 F.2d at 915-16 & n.7. With this in mind, the court addresses the parties' arguments regarding each of Plaintiff's ADA claims.

### 1. ADA Discrimination (Failure to Accommodate)

Plaintiff's claim for ADA discrimination is based on his allegation that Blue Sprig "violated the ADA by intentionally discriminating against [him] based on his disability by unlawful harassment and failure to provide [him] with the reasonable accommodation Defendant once provided." Doc. 1 ¶ 5.4.

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship." *Id.* § 12112(b)(5)(A). To prevail on a failure-to-accommodate claim under the ADA, the plaintiff must establish that: "(1) [he or she] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Weber v. BNSF R.R. Co.*, 989 F.3d 320, 323 (5th Cir. 2021) (footnote and citation omitted).

Regarding the second and third elements, the Fifth Circuit in *Taylor v. Principal Finance Group, Incorporated* distinguished between an employer's knowledge of an employee's disability and an employer's knowledge of the employee's limitations resulting from that disability and

explained that the focus should be on the limitation rather than the disability itself, particularly when dealing with mental disabilities:

> For purposes of proving ADA discrimination, it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability. This distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities. "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." 29 C.F.R. 1630.2(j), App. (1995); 42 U.S.C. § 12112(a)(5)(A) ("[T]he term 'discriminate' includes . . . not making reasonable accommodations to the *known physical or mental limitations* of an otherwise qualified individual with a disability. . . .") (emphasis added); 29 C.F.R. 1630.9, App. (1995) ("Employers are obligated to make reasonable accommodations only to the physical or mental *limitations* resulting from the disability that is known to the employer.") (emphasis added).

> . . . .

> **Whe[n] the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, as is often the case when mental disabilities are involved, the initial burden rests primarily upon the employee, or his health-care provider, to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations. It simply stands to reason that the employee and his health-care provider are best positioned to know what type of accommodation is appropriate for the employee. When the nature of the disability, resulting limitations, and necessary accommodations are uniquely within the knowledge of the employee and his health-care provider, a disabled employee cannot remain silent and expect his employer to bear the initial burden of identifying the need for, and suggesting, an appropriate accommodation.** When dealing in the amorphous world of mental disability, we conclude that health-care providers are best positioned to diagnose an employee's disabilities, limitations, and possible accommodations.

93 F.3d 155, 164-65 (5th Cir. 1996) (emphasis added).

Blue Sprig contends that there is no evidence in this case that Plaintiff requested an accommodation or made any limitations resulting from his disability known to Blue Sprig. Plaintiff disagrees and argues that: "[he] informed Defendant of his Asperger['s]s diagnosis during

his interview and later requested that the child[']s mother be present during sessions to mitigate safety concerns and facilitate effective therapy." Doc. 21 at 6.

Plaintiff does not identify the evidence that he believes supports this assertion as required by this District's Local Civil Rules for summary judgment briefing. It appears, however, that Plaintiff is relying on the following statement in his summary judgment response: "Plaintiff sent a text and follow-up email on July 2, 2021 to Ms. Sadruddin, stating 'I don't think I am doing [the seven-year-old child] again without his mom.'" Doc. 21 at 3 (quoting "Pl.['s] Dep[.] 43:22-44:21). He also states in his sworn answer to Defendant's Interrogatory No. 4 as follows:

ANSWER:

Regarding my autism spectrum disorder, I requested the following accommodation- On Friday, July 2, 2021, I requested assistance with a violent c[hild] to administer their session successfully. This request was made because of the extreme behavior of the client. The c[hild] had previously punched my BCBA supervisor, vandalized others[']s possessions, and hit and kicked me multiple times. During my time there, I observed no other c[hild] that engaged in as many violent actions as the c[hild] I was working with. There were also no other c[hildren] that I observed engaging in vandalism. Blue Sprig assigned me this c[hild] on my third day of working as an RBT.

Doc. 21 at 12.

Assuming that Blue Sprig was aware of Mr. Putnam's Asperger's disability, the evidence relied on by Plaintiff is insufficient to raise a genuine dispute of material fact as to whether he requested an accommodation because of his disability or whether Blue Sprig was aware of his limitations resulting from such disability. Plaintiff's statement—"I don't think I am doing [the seven-year-old child] again without his mom"—does not qualify as a request. Doc. 21 at 3 (quoting "Pl.['s] Dep[.] 43:22-44:21). Even assuming that it does, Plaintiff acknowledges that he made this statement or request "because of the extreme behavior of the client," not because of any specific limitation resulting from his disability. Thus, a reasonable jury could not infer from this

**Memorandum Opinion and Order – Page 11**

that Blue Sprig was aware of Mr. Putnam's disability limitations or the need for an accommodation to address any such limitations.

Plaintiff's subsequent e-mail to Ms. Sadruddin regarding this statement—in which he explained that he had attempted to use certain behavior techniques to no avail with the child, and he expressed the view that "I think there could be a motivation [on the child's part] to follow instructions with mom present"—lends further support to the conclusion that this statement was not made to notify Blue Sprig of any specific limitation resulting from his disability or to request a reasonable and appropriate accommodation. Def.'s App. 43-45; *see also* Def.'s App. 12-14. Thus, although Plaintiff contends in his interrogatory response—that he "requested the following accommodation[:] On Friday, July 2, 2021, I requested assistance with a violent client to administer their session successfully—there is no evidence that this request for assistance included a request to not work with this particular child anymore or a request for assistance in the form of additional training or supervision with respect to this child because of a disability limitation. Accordingly, regardless of whether Plaintiff's intent was to request such an accommodation, the manner in which he expressed any such intent was not sufficiently specific to meet his burden under *Taylor* and apprise his employer that an accommodation was being requested to address a disability limitation.

Further, considering the discreet nature of Mr. Putnam's alleged mental disability, the specific limitations resulting from such disability and any accommodation he needed were uniquely within his knowledge. *See Tayl*or, 93 F.3d at 164-65. It was, therefore, incumbent on him to come forward and identify such limitations, and to suggest to Blue Sprig appropriate and reasonable accommodations. *Id.* In the absence of evidence in this regard, the same knowledge cannot be attributed to his former employer Blue Sprig, and Mr. Putnam's statement or request that "I don't think I am doing [the seven-year-old child] again without his mom" was insufficient

**Memorandum Opinion and Order – Page 12**

to put Blue Sprig on notice of any such limitation or the type of reasonable accommodation Mr. Putnam needed to perform his duties as an RBT. *Id.* Likewise, this statement or request by him was far too vague to notify Blue Sprig that an accommodation or ongoing accommodation with respect to the child in question was needed because of any known limitations attributable to his mental disability. *Id.* As Plaintiff has failed to raise a genuine dispute of material fact regarding the second and third elements of his discrimination claim under the ADA based on failure-to-accommodate, Blue Sprig is entitled to judgment as a matter of law on this claim, which will be dismissed with prejudice.

### 2.  Hostile Work Environment or ADA Harassment-Based Discrimination

In addition to contending that Blue Sprig "violated the ADA by intentionally discriminating against [him] based on his disability by unlawful harassment," Plaintiff contends that he was exposed to a hostile work environment and was "consequently . . . forced to quit." Doc. 1 ¶¶ 4.4, 5.4-5.7. Although the parties' summary judgment briefing addresses these as separate claims, presumably because they were pleaded in this manner, the court addresses their contentions regarding harassment-based discrimination and hostile work environment under the ADA together, as the legal standard for both is the same.

### a.  Applicable Legal Standard

The ADA prohibits harassment due to disability. *See Flowers v. Southern Reg'l Physician Servs. Inc.*, 247 F.3d 229, 234-35 (5th Cir. 2001). In *Flowers*, the Fifth Circuit officially recognized the viability of disability-based harassment claims under the ADA, reasoning that,

> [b]ecause Title VII has been extended to hostile work environment claims [and Title VII and the ADA are similar in their language, purposes, and remedial structures], we follow the growing consensus that our harassment jurisprudence be extended to claims of disability-based harassment. As such, we find that a cause of action for disability-based harassment is viable under the ADA.

*Id.* Because of the similarity between ADA disability-based harassment claims and claims for hostile work environment under Title VII, ADA disability-based harassment claims are "modeled after" Title VII hostile work environment claims. *See id.* at 235 (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)). Thus, whether referred to as a disability-based harassment claim or a hostile work environment claim, the elements for such claims under the ADA are the same as those for hostile work environment claims under Title VII. *See Flowers*, 247 F.3d at 235 (citation omitted).

To prevail on a claim of disability-based harassment or hostile work environment under the ADA, the plaintiff must prove that:

> (1) that [he or] she belongs to a protected group; (2) that [he or] she was subjected to unwelcome harassment; (3) that the harassment complained of was based on [his or] her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Id.* at 235-36 (citing *McConathy*, 131 F.3d at 563). The harassment alleged by a plaintiff "must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Flowers*, 247 F.3d at 236 (quotation marks omitted). "Whether an environment is hostile or abusive depends on the totality of the circumstances," and factors such as "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance" are considered. *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022) (citations omitted).

### b. Defendant's Arguments

Blue Sprig first argues that Mr. Putnam's harassment-based claim or claims fail because he cannot satisfy the fourth element—that the harassment complained of affected a term, condition, or privilege of employment. In this regard, Blue Sprig contends that Mr. Putnam cannot show that he suffered an adverse employment action given his decision to resign. Alternatively, Blue Sprig contends that Mr. Putnam cannot show that he was constructively discharged, arguing that:

> [he] was not subjected to any severe or pervasive harassment because of his disability, much less harassment so severe that he had no choice but to resign. Indeed, Plaintiff did not suffer from any cognizable harassment at all. Furthermore, Plaintiff did not report any harassment, nor give Blue Sprig an opportunity to address any of Plaintiff's alleged concerns. Plaintiff abruptly decided to quit during the session with the seven[-]year-old child and announced his resignation without speaking with anyone beforehand. Under Fifth Circuit law, this dooms any constructive discharge contention, even if Plaintiff could establish a working environment so intolerable that he had no choice but to quit. Accordingly, Plaintiff cannot establish a prima facie case of disability discrimination[.]

Doc. 20 at 10 (footnote omitted).

In support of its argument that Plaintiff's ADA discrimination claim is doomed because of his abrupt decision to resign before giving Blue Sprig an opportunity to address his concerns, Defendant asserts:

> [A]n employee who resigns before giving his employer a reasonable opportunity to address his concerns cannot maintain a viable constructive discharge claim. *See Williams v. Barnhill's Buffet, Inc[.]*, 290 F[.] App[']x[] 759, 762, (5th Cir. 2008) (affirming summary judgment on constructive discharge claim because employee resigned without affording the employer a reasonable opportunity to address Plaintiff's concerns); *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 652-53 (5th Cir. 2004) (no constructive discharge because a reasonable employee who felt compelled to resign due to intolerable working conditions would have attempted resolution of those concerns before quitting); *Thompson v. Naphcare, Inc[.]*, 117 F[.] App[']x[] 317, 324-25 (5th Cir. 2004) (no constructive discharge claim even if incidents alleged by Plaintiff created an intolerable work environment because Plaintiff resigned without affording the employer a reasonable opportunity to address the Plaintiff's concerns); *Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990) (same); *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 741 (5th Cir. 1993); *Harrell v. Orkin, LLC*, 876 F. Supp. 2d 695 (E.D. La. 2012) (granting summary judgment on constructive discharge claim even though plaintiff identified repeated

harassment but failed to afford the employer an opportunity to address [the] concerns before resigning).

Doc. 20 at 9.

In addition, Blue Sprig asserts that Plaintiff cannot satisfy the third requirement for his harassment-based claim or claims because the Fifth Circuit has held that hostile conduct that is not based on protected status is insufficient to raise a genuine dispute of material fact even when a plaintiff subjectively believes that discriminatory intent motivated the defendant's actions. Doc. 20 at 13-14 (citations omitted). Applying this reasoning to Plaintiff's claim or claims, Blue Sprig argues that it is entitled to summary judgment because:

> The entirety of his "hostile work environment" claim consists of normal employment activity, none of which had to do with his condition, and hostility caused by the seven[-]year-old child. Plaintiff contends that his original assignment to the seven[-]year-old child, his "very little training", Ms. Miller's vacation and expectation that he "successfully administer their program", the assignment of the child back to him and Ms. Miller's 45-minute early departure created a hostile work environment. (App[]. 19, Pl.['s] Dep[.] 71[:]13-72:11). He also contends the behavior of the seven[-]year-old child "was an aspect of" his hostile work environment. (App[]. 19, 72:24-73:4).
>
> These general workplace activities—unrelated to Plaintiff's disability—do not support a hostile work environment claim as a matter of law. Indeed, Plaintiff knew that he would be working with children with unpredictable and uncontrollable behavior when he went to work at Blue Sprig, based on his own experience. (App[]. 9-12, 17, Pl.['s] Dep[.], 30:19-43:2; 63:5-65:18). He acknowledged that he did not have the right to choose who he worked with and may have to work with children he did not want to. (App[]. 16-17, Pl.['s] Dep[.] 61:11-63:4). He cannot now say that being asked to do the very thing that he was hired for was harassment.
>
> It is noteworthy that the individual who Plaintiff claims perpetrated the harassment (besides the child), Ms. Miller, was the same person who hired him with knowledge of his Asperger's and offered to work with him in sessions with the child until he could handle it on his own. She did work with him [] for all but the final 45 minutes of a session when she had to leave[] but left when the child was calm and quiet. Plaintiff even admits that Ms. Miller was trying [to] help him succeed. (App[]. 18, Pl.['s] Dep[.] 69:1-15). Any suggestion that Ms. Miller was trying to create a hostile work environment for Plaintiff is belied by these undisputed facts.

Doc. 20 at 14-15.

**Memorandum Opinion and Order – Page 16**

### c.  Plaintiff's Responsive Arguments

Plaintiff admits that he resigned but argues that he has presented evidence that he suffered an adverse employment action because he was constructively discharged.  Plaintiff also asserts that he has presented evidence that: (1) the harassment that he suffered was sufficiently severe and pervasive to alter the conditions of his employment; and (3) Defendant's actions created an objectively and subjectively intolerable environment that compelled his resignation.  Specifically, Plaintiff argues that he suffered an adverse employment action because:

> Plaintiff[']s resignation was the result of intolerable working conditions created by Defendant, constituting constructive discharge. Constructive discharge occurs when an employer makes working conditions so intolerable that a reasonable person in the employee's position would feel compelled to resign. § 11-2 ENDING THE EMPLOYMENT RELATIONSHIP, *Rosalio Garcia v. Department of Agriculture*. 1984 EEOPUB LEXIS 387, 84 FEOR (LRP) 20174. EEOC No. 01831493. Plaintiff has provided evidence that Defendant assigned him to work with a child exhibiting extreme resistance and violent behavior, failed to provide adequate training or support, and left him unsupervised during a critical session, despite his known disability and limitations. These actions created an environment that was objectively and subjectively intolerable, compelling Plaintiff to resign. § 11-2 ENDING THE EMPLOYMENT RELATIONSHIP, *Rosalia Garcia v. Department of Agriculture*. 1984 EEO PUB LEXIS 387, 84 FEOR (LRP) 20174. EEOC No.01831493.

Doc. 21 at 6 (cleaned up).

> In addition, Plaintiff contends that he was subjected to a hostile work environment:

> To establish a hostile work environment claim under the ADA, Plaintiff must show that he was subjected to unwelcome harassment based on his disability, and that the harassment was sufficiently severe or pervasive to alter the conditions of his employment. *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, *Talk v. Delta Airlines[,] Inc*., 165 F.3d 1021. Plaintiff has presented evidence that Defendant assigned him to work with the most challenging client without adequate training or support, ignored his requests for accommodations, and left him unsupervised during a critical session. These actions, combined with the child's violent behavior, created a hostile work environment that interfered with Plaintiff[']s ability to perform his job. *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, *Talk v. Delta Airlines[,] Inc.*, 165 F.3d 1021.

Doc. 21 at 7 (cleaned up). [3]

### d. Analysis

To support the aforementioned assertions, most of which are conclusory in nature, it appears that Plaintiff may be relying on what he refers to in his response as the fourteenth statement of "uncontroverted facts": "Defendant created a hostile work environment and engaged in unlawful retaliation such that Plaintiff was a victim of a constructive discharge causing him to resign." Doc. 21 at 5 (citing Pl.'s Interrogs. 6, 7, 8, 10, 12, and 14). Of these cited interrogatory responses, only his responses to Defendant's Interrogatory Nos. 8, 12, and 14 appear to be relevant to his argument that he was forced to resign. Plaintiff's summary judgment response, however, does not address Defendant's argument that his ADA claim based on constructive discharge fails regardless of whether his working conditions were intolerable because he failed to give his employer Blue Sprig a reasonable opportunity to address his concerns before resigning. Plaintiff's summary judgment response also fails to address Defendant's argument that his harassment-based claim or claims fail as a matter of law in light of the Fifth Circuit's holding that hostile conduct that is not based on protected status is insufficient to raise a genuine dispute of material fact even when a plaintiff subjectively believes that discriminatory intent motivated the defendant's actions.

With respect to constructive discharge claims, the Fifth Circuit in *Aryain v. Wal-Mart Stores, Texas, LP*, 534 F.3d 473 (5th Cir. 2008) explained that, "[i]n certain circumstances, a constructive discharge can be considered a tangible employment action," and "whether an employer's actions constitute a constructive discharge" turns on whether "working conditions

---

[3] Plaintiff's citations in the first paragraph pertain to EEOC decisions. EEOC decisions are not binding authority but may be considered persuasive. *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 725 (5th Cir. 2002) (citing *Smith v. Universal Servs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1972) (noting that civil litigation is "completely separate from the actions of the EEOC")).

[became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Id.* at 480 (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 & 147 n.8, (2004); and citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (setting forth the same standard)).

In conducting a constructive discharge inquiry, the Fifth Circuit considers whether there is evidence to support the following six factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Aryain*, 534 F.3d 473 at 481 (citation omitted).

Consideration of these factors does not support a finding of constructive discharge here, as none of these factors is relevant to the working environment described by Mr. Putnam. Instead, Mr. Putnam's claim of constructive discharge is based on his assertion that Blue Sprig's actions— in "assign[ing] him to work with a child exhibiting extreme resistance and violent behavior"; "fail[ing] to provide [him with] adequate training or support"; and le[aving] him unsupervised during a critical session, despite his known disability and limitations"—created a work environment that was "objectively and subjectively intolerable, compelling [him] to resign." Doc. 21 at 6. As Defendant correctly notes, evidence of "[c]onstructive discharge requires a greater degree of harassment than required by a hostile environment claim." *Lauderdale v. Texas Dep't of Criminal Justice, Instit. Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)); *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 301 (5th Cir. 2001) (explaining that constructive discharge requires a "greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment claim.") (citation omitted).

Even viewing all facts and inferences in the light most favorable to Mr. Putnam, the totality of the circumstances and evidence relied on by him do not establish that Blue Sprig's conduct or treatment of him with respect to work assignments, supervision, and training was so "pervasive or severe" as to "create an abusive working environment." *Flowers*, 247 F.3d at 236. Stated differently, the evidence in this case is not sufficiently egregious to raise a genuine issue of material fact regarding his claim that he was constructively discharged. *See, e.g., Aryain*, 534 F.3d at 481 (affirming summary judgment on the plaintiff's constructive discharge claim, concluding that the plaintiff's evidence of poor treatment—including her transfer to the infant department that involved less customer interaction but not a demotion or salary decrease; being assigned to break down clothing racks that the plaintiff viewed as "punishment," "menial or degrading work," and "tough work [that] . . . only the guys did . . . at night"; being watched by the store manager and the assistant infant department manager on the security camera while performing part of this task; having certain requests by her for breaks denied; having a load of clothes knocked out of her hands one time by the store manager; having to wait outside the store manager's office for long periods when she asked to speak to the manager; being the target of angry looks, laughter, and negative discussion about her by the store manager and the assistant infant department manager; and being subjected to sexually offensive conduct by her supervisor—did "not reach the level required to establish a constructive discharge claim" even considering the facts in the light most favorable to the plaintiff and taking into account the plaintiff's assertions that her supervisors engaged in such conduct to force her to resign).[4]

---

[4] In reaching this conclusion, the court in *Aryain* relied on *Brown v. Bunge Corporation*, 207 F.3d 776 (5th Cir. 2000), in which the Fifth Circuit affirmed the grant of summary judgment on a constructive discharge claim even though the plaintiff "employee was demoted and given fewer job responsibilities." *Aryain*, 534 F.3d at 481 (citing *Brown*, 207 F.3d at 782-83). *Aryain* also relied on *Stephens v. C.I.T. Group/Equipment Financial, Incorporated*, 955 F.2d 1023 (5th Cir. 1992), a case in which the Fifth Circuit affirmed the jury verdict on the plaintiff's constructive discharge claim despite evidence that the plaintiff "had been demoted, faced significant reductions in salary and responsibilities, and was repeatedly asked when he planned to quit." *Aryain*, 534 F.3d at 481 (citing *Stephens*, 955 F.2d at 1027-28).

Moreover, Plaintiff has not pointed to any evidence to support his assertion that Blue Sprig failed to provide him with adequate training, and the court has already determined that his evidence is insufficient to raise a genuine dispute of material fact as to whether Blue Sprig was aware that he needed a reasonable accommodation of some kind to address a known limitation attributable to his autism. Even if Plaintiff was unhappy with the way Blue Sprig responded to his alleged request for accommodation by continuing to assign him to the seven-year-old child and not providing him with adequate supervision during the last forty-five minutes of the therapy session with this child on July 22, 2021, the Fifth Circuit has held that a plaintiff's "disagreement" with an employer "over terms of employment or an accommodation do[es] not amount to harassment." *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 248 (2025) (quoting *Clark v. Champion Nat'l Sec., Inc*., 952 F.3d 570, 585 (5th Cir. 2020)); *see also E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009) ("[t]he ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation.").

Further, this is not a situation in which an employee was required to undertake menial or difficult tasks that fell well outside of his or her job description or requirements. Plaintiff was aware that he would be working with autistic children who acted unpredictably and had not learned techniques yet to control their emotions and behavior. Def.'s App. 11-12, 16-17. He also acknowledged that he may have to work with children with whom he did not want to work. *Id.* at 17. Thus, the arguments and evidence relied on by Plaintiff would not support a reasonable jury in finding that a reasonable person in his shoes would have felt compelled to resign under the circumstances.

Even assuming that a reasonable jury could find that Mr. Putnam was constructively discharged, the court agrees with Blue Sprig that his decision to abruptly quit dooms his ADA claim based on a hostile work environment or harassment-based discrimination. In the constructive

*Memorandum Opinion and Order – Page 21*

discharge context, the Fifth Circuit has recognized that "part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast." *Id.* at 482 (quoting *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir.1987) (quoting *Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir.1987)). In other words, the expectation is that a reasonable employee "should pursue less drastic options before choosing to leave [his or] her job." *Aryain*, 534 F.3d 473 at 482 (citing *Haley*, 391 F.3d at 652).

    Like the plaintiff in *Aryain*, Mr. Putnam did not raise the complaints he now asserts here before resigning. Instead, it is undisputed that Plaintiff quit suddenly during the session with the unruly child and, as he was leaving, stated simply—"[s]ee you later, this is my last day"—without first attempting to discuss his concerns with anyone at Blue Sprig. Def.'s App. 4. The court has already concluded that Mr. Putnam's prior statement or request that "I don't think I am doing [the seven-year-old child] again without his mom" was insufficient to put Blue Sprig on notice of any accommodation or limitation resulting from his disability. The court similarly concludes that this statement was insufficient to apprise Blue Sprig of his concerns about having to work with this child, the adequacy of his training, or the level of support provided to him. For this reason and because of Plaintiff's sudden resignation, Blue Sprig had no opportunity to address his concerns to improve his situation at work. *See Aryain*, 534 F.3d 473 at 481-82.

    Given the lack of severity of the type of harassment Mr. Putnam claims to have experienced, a reasonable employee in his shoes experiencing this type of treatment would not have felt compelled to resign *without first reporting the alleged harassment to his supervisors or someone at Blue Sprig with authority to address the situation*. *See Woods*, 274 F.3d at 301 (affirming summary judgment on the plaintiff's hostile work environment claim based on constructive discharge because the type of harassment experienced by the plaintiff did not satisfy the higher standard required for constructive discharge, and a reasonable woman experiencing such

**Memorandum Opinion and Order – Page 22**

harassment would not have felt compelled to resign but instead to report the harassment to her supervisors).

The court has not found any Fifth Circuit authority or case in this circuit that has addressed the precise situation presented, that is, how a reasonable, autistic person with Asberger's in Plaintiff's shoes would have reacted, and Plaintiff has not pointed the court to any such authority or evidence indicating that a reasonable, autistic person with Asberger's in Plaintiff's shoes would have acted differently than a reasonable person without autism or Asberger's. In any event, because Mr. Putnam previously attempted to express certain concerns he had about this particular child to Blue Sprig, albeit inarticulately, the court concludes that a reasonable person in his shoes would have brought his concerns (about having to work with this child, the adequacy of his training, or the level of support provided to him) to Blue Sprig's attention before abruptly resigning without providing Blue Sprig notice or an opportunity to address what he perceived as harassment, a lack of training, or an untenable situation. Accordingly, this is yet another reason that Plaintiff's hostile work environment or harassment-based discrimination claim under the ADA premised on constructive discharge fails. Additionally, in failing to respond to this argument by Defendant, Plaintiff **waived** it.[5]

---

[5] The Fifth Circuit has held that a litigant's failure to raise, address, or brief an argument in the district court constitutes a waiver of that issue on appeal. *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011) ("Failure to raise an argument before the district court waives that argument" on appeal.); *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (same) (citations omitted); *see also Nichols v. Enterasys Networks, Inc*., 495 F.3d 185, 190 (5th Cir. 2007) (explaining that inadequately briefed issues are considered waived) (citing *Burnley v. City of San Antonio*, 470 F.3d 189, n.10 (5th Cir. 2006) ("Burnley also seeks an award of appellate attorney's fees, but provides neither legal authority nor evidence in support of such an award. Accordingly, her argument is waived for inadequate briefing."). District courts have concluded, by analogy, that the failure to address, brief, or respond to an argument or issue in the district court also waives that argument or issue in the district court. *See, e.g., Magee v. Life Ins. Co. of N. Am*., 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) ("[F]ailure to brief an argument in the district court waives that argument in that court"); *see also Kellam v. Metrocare Servs*., 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (quotation omitted), *aff'd*, 560 F. App'x 360 (5th Cir. 2014).

**Memorandum Opinion and Order – Page 23**

For similar reasons, Plaintiff **waived** any argument he may have had by not responding to Defendant's contention that his hostile work environment or harassment-based claim fails because it is not based on his protected status, and subjective belief that discriminatory intent may have motivated the defendant's alleged actions is insufficient.[6]  In this regard, Defendant argues as follows:

> The law "does not protect employees from hostile conduct that is not based on their protected status." *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 n.2 (5th Cir. 1996). In other words, "[p]oor treatment without more is not sufficient to show harassment based on [disability], even if [the plaintiff] believes [disability] to be the motivating factor for the poor treatment." *Eaton-Stephens v. Grapevine Colleyville Ind. Sch. Dist.*, 715 F[.] App['']x[] 351, 356 (5th Cir. 2017) (per curiam); *see Baker v. FedEx Ground Package Sys. Inc.*, 278 F[.] App['']x[] 322, 329 (5th Cir. 2008) (per curiam) (finding "inappropriate" comments that were not "based on race" could not 'sustain a race-based hostile work environment claim"). This includes allegedly unfair assignments, micromanagement, uncomfortable pressure, or being treated as incompetent. *See, e.g., Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 F[.] App['']x[] 104, 107 (5th Cir. 2009) (per curiam) (emphasis added) ("Though [the plaintiff] may believe that all twelve incidents were motivated by racial animus, subjective belief of racial motivation, without more, is not sufficient to show a hostile work environment."); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir. 1995) ("[Plaintiff's] subjective belief that discriminatory intent motivated [complained of] actions is insufficient to establish a material question of fact regarding [defendant's] motives.").

Doc. 20 at 13-14 (cleaned up).

As indicated, Defendant further asserts, and the court agrees, that the "normal employment activity" and "general workplace activities" described by Plaintiff that are "unrelated to [his]

---

[6] In his summary judgment response, Plaintiff contends that Defendant's assertion that he "failed to provide evidence linking his disability to the alleged adverse actions" is without merit because he "has presented direct and circumstantial evidence that Defendant was aware of his disability, failed to provide reasonable accommodations, and created intolerable working conditions." Doc. 20 at 8. The factual, legal, and evidentiary basis for this stand-alone, conclusory argument at the end of Plaintiff's response, however, is unclear such that, even if not waived for failure to address Defendant's argument, the issue was waived because it was not adequately briefed by Plaintiff in accordance with this district's Local Civil Rules, and the undersigned **declines** to speculate on Plaintiff's behalf with respect to arguments that have not been sufficiently briefed and developed, or those not accompanied by citations to evidence in the summary judgment record. *See Architectural Granite & Marble, LLC v. Pental*, No. 3:20-CV-295-L, 2023 WL 121996, at *4 (N.D. Tex. Jan. 6, 2023) (concluding that an inadequately briefed argument was waived for failure to comply with applicable Local Civil Rules and noting that the Fifth Circuit applies a similar rule that is derived from the Federal Rules of Appellate Procedure).

disability" do not, as a matter of law, support a claim by him based on hostile work environment or harassment-based discrimination. Moreover, although Mr. Putnam avoided directly answering questions during his deposition about whether he believed that he had the right to choose the children with whom he worked and, instead, responded that he thought he "could voice [his] concern about difficulties [he] was having with an individual [child]," Def.'s App. 16-17, he acknowledged the possibility of his having to work with a child with whom he did not want to work while employed by Blue Sprig. *Id.* at 16. In any case, the summary judgment record is devoid of evidence that remotely suggests that the treatment Plaintiff now complains of was based on his protected status or disability. Thus, this is a separate ground for concluding that Defendant is entitled to summary judgment as a matter of law on Plaintiff's claim(s) under the ADA for hostile work environment and/or disability-based harassment, which will be dismissed with prejudice.

### 3. ADA Retaliation

Defendant next moves for summary judgment on Plaintiff's retaliation claim. ADA retaliation claims under the ADA are assessed according to the same burden-shifting framework as Title VII claims when, as here, the plaintiff relies on circumstantial evidence. *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 348-49 (5th Cir. 2019) (noting in a case involving an ADA retaliation claim that the well-known burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), applies when the plaintiff relies only on circumstantial evidence); *Feist v. Louisiana, Dept. of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (applying the same burden shifting standard in addressing the plaintiff's retaliation claims under the ADA and Title VII) (citations omitted).

To establish "unlawful retaliation, a plaintiff must establish a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a

causal connection between the protected act and the adverse action." *Nall*, 917 F.3d at 348-49. If the plaintiff establishes a prima facie case, the burden shifts to the defendant, who must then come forward with a "legitimate, non-discriminatory reason" for the adverse action. *Id.* at 349. The presentation of such a reason by the defendant shifts the burden back to the plaintiff to "adduce sufficient evidence the proffered reason is pretext for retaliation." *Id.* At this stage, the plaintiff must show that the adverse action would not have occurred "but for" the plaintiff's protected activity. *See Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004). The plaintiff "can establish pretext in the context of retaliation 'by showing that a discriminatory motive more likely motivated her employer's decision.'" *Saketkoo*, 31 F.4th at 1002 (citations omitted).

In his Complaint, Plaintiff alleges only as follows regarding his retaliation claim: "[He] reported the discriminatory, retaliatory behavior and the hostile work environment. Despite [his] complaints regarding such environment, Defendant took no action to remedy the environment." Doc. 1 at 5.9. While Plaintiff alleges in the preceding paragraph that he incorporates the allegations in all prior paragraphs of his Complaint, there are no factual allegations in his pleadings that would support a retaliation claim that arose after he resigned based on Blue Sprig's decision to report the July 22, 2021 incident with the seven-year-old child to the BACB. For the first time in response to Defendant's Motion for Summary Judgment, however, Plaintiff asserts that his retaliation claim under the ADA is based on his contention that Blue Sprig's decision to report the July 22, 2021 incident with the seven-year-old child to the BACB after he resigned constitutes retaliation because Blue Sprig was not required by law to report the incident to the BACB, and it reported the incident to harm his professional reputation. Doc. 21 at 8.

As Plaintiff does not mention or attempt to defend the original pre-resignation factual basis for his retaliation claim in responding to Defendant's summary judgment motion, the court determines that he has **abandoned** *his original retaliation claim under the ADA to the extent based*

*on this theory. See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (explaining

that "failure to pursue [a] claim beyond [the] complaint constitute[s] abandonment" of the claim,

which cannot be subsequently revived). Defendant is, therefore, entitled to summary judgment, as

a matter law, on Plaintiff's retaliation claim that is based on events that occurred before he resigned

from Blue Sprig, and the court's remaining analysis focuses on the parties' contentions regarding

the new post-resignation factual basis for Plaintiff's retaliation claim under the ADA.[7]

Defendant argues that, like his discrimination claim, Plaintiff's ADA retaliation claim

based on this new post-resignation retaliation theory fails because he cannot establish a prima facie

case of retaliation in light of his admission that there is no evidence that he suffered an adverse

action or engaged in protected activity. In this regard, Defendant contends that the evidence

establishes that Mr. Putnam "quit (and was not constructively discharged [from his employment

at Blue Sprig]) and . . . his retaliation complaint rests on legally allowed and required reporting to

agencies that occurred *after* his employment ended." Doc. 20 at 15.[8] In addition, Defendant asserts

---

[7] The Fifth Circuit has often held that a claim that is not raised in a pleading but for the first time in response to a summary judgment motion is not properly before the district court. *See, e.g., Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). A similar rule disallowing new claims has also been applied to new factual bases for previously pleaded legal theories. *See, e.g., De Franceschi v. BAC Home Loans Serv., L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012); *Benavides v. EMC Mortg. Corp.*, No. 3-12-46, 2013 WL 416195, at *4 (S.D. Tex. Jan. 31, 2013). The Fifth Circuit, however, has also held that courts should construe new theories raised for the first time in a summary judgment response as a motion to amend. *See, e.g., Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008). In this case, the court will construe Plaintiff's summary judgment response as a motion to amend his pleadings to add the new post-resignation ADA retaliation theory because Blue Sprig was on notice of his assertions in this regard as a result of discovery conducted by the parties, and it mentions the issue concerning the BACB in its summary judgment brief as though the facts had been properly pleaded in Plaintiff's Complaint. The court also notes that Plaintiff has not previously amended his pleadings, and the Fifth Circuit has held that "[a] motion to dismiss or for summary judgment does not extinguish a plaintiff's right to amend" his or her pleadings, pursuant to Federal Rule of Civil Procedure 15(a), "once as a matter of course at any time before a responsive pleading is served." *Debowale v. United States Inc.*, 1995 WL 450199, at *2 (5th Cir. 1995) (citing *Zaidi v. Ehrlich*, 732 F.2d 1218, 1219 (5th Cir. 1984); and quoting Fed. R. Civ. P. 15(a)). As Plaintiff only references the ADA in his response to Defendant's summary judgment motion seeking dismissal of his retaliation claim under the ADA, the court does not construe Plaintiff's response to include a request to amend his pleadings to add a retaliation claim under Texas law based on his new post-resignation BACB theory.

[8] By emphasizing that the alleged retaliation occurred *after* Plaintiff resigned, Defendant appears to suggest that this fact is fatal to Plaintiff's ADA retaliation claim insofar as Defendant contends that such conduct by it does not qualify as an adverse action because it occurred after Plaintiff resigned. In *Robinson v. Shell Oil Co.*, 519 U.S. 337, 345-46 (1997), the Supreme Court held that Title VII protects former employees against discrimination, including retaliation

that, when deposed, Plaintiff was unable to "identify any protected activity that he engaged in that

would cause retaliation." *Id.* at 15-16.

Instead, according to Defendant, Plaintiff's deposition testimony reflects that he "never

complained about any form of discrimination"; that he was unable to "identify any activity that

would have triggered Blue Sprig's supposed retaliation"; that the "most Plaintiff could surmise

was that his request to have the mother present during [his] sessions with the seven[-]year-old

child 'may have' been the basis, but [he] admits that he was not terminated or disciplined after this

request, and [Blue Sprig] actually helped [him] in trying to succeed." *Id.* at 16.  Defendant

concludes by asserting that "Plaintiff's retaliation claim is centered on Blue Sprig's *post-*

*employment* reports to government agencies and the BACB, which are not only allowable and

---

such that a former employee can sue for allegedly retaliatory postemployment actions taken by a former employer. In *Robinson*, the former employee alleged that that a negative employment reference sent from a former employer to a prospective employer was in retaliation for his having filed a charge with the Equal Employment Opportunity Commission. *Id.* at 346. The holding in *Robinson* has been interpreted as "a principle to ensure that employees who are discharged in retaliation for their complaints are able to bring claims even though they are no longer a current employee . . . , not to give someone who was once employed by a company a perpetual right of action for any unfavorable action that the company may take at some point in the future." *See, e.g., Wells v. Texas Tech Univ.*, 2024 WL 2967859, at *5 (N.D. Tex. May 7, 2024) (citing *Robinson*, 519 U.S. at 346). As the district court in *Wells* aptly notes, the issue of whether the holding in *Robinson* applies turns on the timing of the alleged postemployment retaliation:

> Consequently, a former employee fails to plausibly allege Title VII retaliation when she is sufficiently removed from the employment relationship because the alleged harm is so attenuated that it would not dissuade a reasonable worker from making a discrimination charge. *See Allen v. Radio One of Tex. II, L.L.C.*, 515 F. App'x 295, 302 (5th Cir. 2013) (citing *Robinson*, 519 U.S. at 339). In *Allen*, for example, the Fifth Circuit rejected the plaintiff's claim of retaliation when her former employer refused to do business with her new company, which occurred more than a year after her protected activity and 18 months after she was fired. *Id.* In contrast, retaliation by a former employer was actionable when the plaintiff asserted that he received a negative reference shortly after he was fired and had filed an EEOC charge. *Robinson*, 519 U.S. at 339.

*Wells v. Texas Tech Univ.*, 2024 WL 2967859, at *5.  As herein explained, however, the timing between Blue Sprig's alleged postemployment retaliation in relation to Plaintiff's alleged engagement in protected activity is unclear. Additionally, the issue of whether Blue Sprig's report to BACB does or does not constitute an adverse action because it occurred after Plaintiff resigned was not adequately briefed by Defendant, so the court does not consider it as a ground supporting summary judgment on Plaintiff's ADA retaliation claim.

**Memorandum Opinion and Order – Page 28**

required, but also not adverse *employment* actions." For all of these reasons, Defendant contends that Plaintiff cannot establish a prima facie case of retaliation.

The court has already determined that Plaintiff has failed to raise a genuine dispute of material fact as to whether he engaged in protected activity under the ADA by seeking an accommodation. This alone dooms Plaintiff's retaliation claim. The court also determined that no genuine dispute of material fact exists as to whether Plaintiff suffered an adverse employment action notwithstanding his contentions that he was constructively discharged. That Plaintiff was unable to establish that he suffered an adverse action in the form of constructive discharge, however, has no bearing on whether, as he contends, that he was retaliated against *after* resigning. As this issue was not adequately briefed, the court **declines** to consider it as an alternative ground entitling Defendant to summary judgment on Plaintiff's retaliation claim.[9]

---

[9] By emphasizing that the alleged retaliation occurred *after* Plaintiff resigned, Defendant appears to suggest that such fact is fatal to Plaintiff's ADA retaliation claim insofar as Defendant contends that such conduct by it does not qualify as an adverse action because it occurred after Plaintiff resigned. In *Robinson v. Shell Oil Co*., 519 U.S. 337, 345-46 (1997), the Supreme Court held that Title VII protects former employees against discrimination, including retaliation such that a former employee can sue for allegedly retaliatory postemployment actions taken by a former employer. In *Robinson*, the former employee alleged that that a negative employment reference sent from a former employer to a prospective employer was in retaliation for his having filed a charge with the Equal Employment Opportunity Commission. *Id.* at 346. The holding in *Robinson* has been interpreted as "a principle to ensure that employees who are discharged in retaliation for their complaints are able to bring claims even though they are no longer a current employee . . . , not to give someone who was once employed by a company a perpetual right of action for any unfavorable action that the company may take at some point in the future." *See, e.g., Wells v. Texas Tech Univ*., 2024 WL 2967859, at *5 (N.D. Tex. May 7, 2024) (citing *Robinson*, 519 U.S. at 346). As the district court in *Wells* aptly notes, the issue of whether the holding in *Robinson* applies turns on the timing of the alleged postemployment retaliation:

> Consequently, a former employee fails to plausibly allege Title VII retaliation when she is sufficiently removed from the employment relationship because the alleged harm is so attenuated that it would not dissuade a reasonable worker from making a discrimination charge. *See Allen v. Radio One of Tex. II, L.L.C*., 515 F. App'x 295, 302 (5th Cir. 2013) (citing *Robinson*, 519 U.S. at 339). In *Allen*, for example, the Fifth Circuit rejected the plaintiff's claim of retaliation when her former employer refused to do business with her new company, which occurred more than a year after her protected activity and 18 months after she was fired. *Id.* In contrast, retaliation by a former employer was actionable when the plaintiff asserted that he received a negative reference shortly after he was fired and had filed an EEOC charge. *Robinson*, 519 U.S. at 339.

*Wells v. Texas Tech Univ*., 2024 WL 2967859, at *5. As herein explained, however, the timing between Blue Sprig's alleged postemployment retaliation in relation to Plaintiff's alleged engagement in protected activity is unclear. For this reason and because the issue of whether the post-resignation reporting to BACB constitutes an adverse action

The court also **declines** to consider whether Plaintiff has raised a genuine dispute of material fact regarding pretext. Although Defendant's contention—that its reporting of the July 22, 2021 incident to the BACB was legally allowable—is sufficient to satisfy its burden of proffering a legitimate, nondiscriminatory reason for reporting the incident to the BACB and shift the burden to Plaintiff to "adduce sufficient evidence the proffered reason is pretext for retaliation," *Nall*, 917 F.3d at 348-49, Defendant's summary judgment brief is limited to the issue of whether Plaintiff can establish a prima facie case of retaliation. In its reply brief, Defendant significantly expounds on this argument, contending that, even assuming for argument sake that Mr. Putnam's request to not work with the difficult child without his mother present qualifies as a protected activity in the form of a request for reasonable accommodation (which it disputes), its reporting to the BACB of the July 22, 2021 incident involving him does not constitute retaliation because:

> Plaintiff's behavior with the difficult child clearly qualifie[d] as a possible ethics code violation that would trigger an obligation for a responsible provider to report. Plaintiff admitted he told the crying autistic child, who he "strongly disliked" and referred to as a "punk", "I'll give you something to cry about", made contact with the child and caused him to fall.

Doc. 22 at 6.

For support, Defendant relies on portions of the BACB Ethics Code for Behavior Analysts ("BACB Ethics Code"), including the requirements that behavior analysts: (1) "not engage in behavior that is harassing or hostile toward others"; (2) "prioritize clients' rights and needs in service delivery" by "provid[ing] services that are conceptually consistent with behavioral principles, based on scientific evidence, and designed to maximize desired outcomes for and protect all clients . . . from harm; (3) "select, design, and implement behavior-change interventions (including the selection and use of consequences) with a focus on minimizing risk of harm to the

---

was not adequately briefed by Defendant for the court to consider it as a ground supporting summary judgment on Plaintiff's ADA retaliation claim.

client and stakeholders"; and (4) "act in the best interest of clients, taking appropriate steps to support clients' rights, maximize benefits, and do no harm." Doc. 22 at 4-5 (quoting Def.'s Reply App. 51-69).

Defendant's argument in this regard goes to the issue of whether Plaintiff can establish that Blue Sprig's proffered legitimate, business reason for reporting the incident to the BACB is a pretext for unlawful retaliation under the ADA. Among other things, Plaintiff contends that the court should not consider Defendant's evidence regarding the BACB Ethics Code, which was not produced to Plaintiff during discovery, unless he is given an opportunity to file a surreply.[10] As

---

[10] Blue Sprig contends that this argument by Plaintiff is "misplaced" because Plaintiff never requested that it produce a copy of the BACB Ethics Code during the discovery phase, and this document is a publicly available online. In discussing a similar issue and argument, the Fifth Circuit in *Martino v. Kiewit New Mexico Corp.*, 600 F. App'x 908, 910-11 (5th Cir. 2015), explained that Federal Rule of Civil Procedure "26(a)(1)(A)(ii) mandates that a party initially disclose 'all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.'" For this reason, the Fifth Circuit rejected Martino's "attempts to justify his nondisclosure by claiming the USACE Contract was a public document, equally available to both parties," reasoning that "even if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses." *Id.* at 911.

The court similarly rejects Blue Sprigs attempt to justify its admitted failure to disclose this document that it now relies on to support its Motion for Summary Judgment. Under Federal Rule of Civil Procedure 37(c), a "party is not allowed to use [undisclosed] information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Martino*, 600 F. App'x at 911 (quoting Fed. R. Civ. P. 37(c)). In determining whether evidence should be excluded under Rule 37(c), courts consider: (1) the party's explanation for the failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to the opposing party in allowing the evidence, and (4) the availability of a continuance. *Id.* (citing *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 279-80 (5th Cir. 2009)). Here, Blue Sprig lacks a compelling explanation for not producing a copy of the BACB Ethics Code even though this document is central to its defense that its decision to report the July 2021 incident involving Plaintiff to the BACB is not evidence of unlawful retaliation under the ADA because it was required to report the incident to the BACB. As Blue Sprig has maintained, at least initially, that its Motion for Summary Judgment focused only on the prima facie stage of Plaintiff's retaliation claim, the court determines that the import of now allowing Blue Sprig to rely on this document is of no moment even though it appears that Blue Sprig may have changed course or direction in its reply by expanding on its earlier argument. While Blue Sprig initially argued that it was required to report the incident to the BACB, and in doing so it proffered a legitimate business reason for its decision, its coming forward with evidence to prove that its decision in this regard was not retaliation, goes beyond the stated scope of its Motion for Summary Judgment that focused only on whether Plaintiff could establish a prima facie case of retaliation. If not allowed to file a surreply, Plaintiff will be prejudiced by the court's consideration of this evidence. Given the late stage of the proceedings in this case in which the trial was set and only vacated to give the court time to rule on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Leave to File Surreply, a continuance is no longer an option. Moreover, given the less than stellar briefing by both side's attorneys, a continuance to resolve this issue would prolong this litigation unnecessarily particularly in light of the court's determination that Blue Sprig is entitled to summary judgment on Plaintiff's ADA retaliation claim on another ground. Accordingly, consideration of the foregoing factors weighs against allowing Blue Sprig to rely on this evidence in support of its Motion for Summary Judgment.

this argument in Defendant's reply goes far afield of its initial contention that Plaintiff cannot establish a prima facie case of retaliation and is based on evidence not previously produced, the court will not consider it in ruling on Defendant's Motion for Summary Judgment.

The court has already determined that Plaintiff has failed to identify summary judgment evidence sufficient to raise a genuine dispute of material fact with respect to whether he engaged in protected activity in connection with his discrimination claim. For similar reasons, he fails to satisfy his burden of establishing a prima facie case of retaliation under the ADA with respect to this requirement. Accordingly, even though the court has declined to consider and address all of the defense arguments raised by Blue Sprig, it determines that Blue Sprig is entitled to judgment as a matter of law on Plaintiff's new post-resignation retaliation claim under the ADA for the reasons stated such that this claim will be dismissed with prejudice.

## III.    Plaintiff's Motion for Leave to File Surreply (Doc. 23)

Plaintiff contends that he should be allowed to file a surreply in connection with Defendant's Motion for Summary Judgment for two reasons. For the reasons that follow, the court **denies** Plaintiff's Motion for Leave.

This court has previously explained that, once a motion is filed, this District's Local Civil Rules permit a response by the nonmovant and a reply by the movant. *See* Local Civil Rule 7.1. Thus, the movant is entitled to file the last pleading. Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored and must not to be filed as a routine matter, as they usually are a strategic effort by the nonmovant to have the last word on a matter beyond that permitted and contemplated by this district's Local Civil Rules. *Bailey v. Mansfield Indep. Sch. Dist.*, 2019 WL 175088, at *2 (N.D. Tex. Jan. 10, 2019). In addition, the court has found that surreplies usually are not that helpful in resolving pending matters, as they tend to repeat prior arguments and only serve to unnecessarily delay the resolution of the

**Memorandum Opinion and Order – Page 32**

underlying motion. The undersigned, therefore, only allows filings beyond that permitted by Local Civil Rule 7.1 in exceptional or extraordinary circumstances. *See PMA Ins. Grp. v. Polk Mech. Co., LLC*, 2024 WL 3974736, at *2 (N.D. Tex., Aug. 27, 2024) (citing *Gezu v. Charter Comm'ns*, 17 F.4th 547, 556 (5th Cir. 2021) ("Because the rules do not provide for surreplies as a matter of right, the district court only accepts such filings 'in exceptional or extraordinary circumstances.'"). This District is not alone in its treatment of surreplies. *PMA Ins. Grp.*, 2024 WL 3974736, at *2 (citing *Weems v. Hodnett*, No. 10-CV-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011) (citing cases)).

To establish that exceptional or extraordinary circumstances warranting a surreply exist, a party seeking leave to file a surreply ordinarily must show that a new issue, theory, argument, or evidence was raised or relied on for the first time in the movant's reply brief or in connection with the reply brief. *Id.*; *see also Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (holding that "the district court did not abuse its discretion" in denying Plaintiff's motion to file a surreply "because [Defendant] did not raise any new arguments in its reply brief"). Such circumstances arise infrequently, as the scope of a reply is limited to addressing arguments raised in the movant's initial motion and brief because it would be unfair for the movant "to sandbag and raise wholly new issues in a reply." *PMA Ins. Grp.*, 2024 WL 3974736, at *2 (citing *Weems*, 2011 WL 2731263, at *10. For similar reasons, "arguments raised for the first time in a Reply brief are [generally] waived." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (citation omitted). With these considerations in mind, the court considers Plaintiff's grounds for seeking to file a surreply.

### A.     Timeliness of Plaintiff's Summary Judgment Response

Plaintiff first asserts that "Defendant insinuates, albeit wrongly that Plaintiff's [summary judgment] response is late." In this regard, Plaintiff contends that, while this District's Local Civil Rules require responses to be filed within 21 days of a summary judgment motion, Federal Rule

of Civil Procedure 6(d) provides an additional three days for responses when a motion is filed electronically. He, therefore, argues that his summary judgment response, which was filed on August 14, 2025, twenty-four days after Defendant's Motion for Summary Judgment was timely filed.

As Defendant correctly notes, Plaintiff's reliance on Rule 6(d) of the Federal Rules of Civil Procedure is misplaced, as this rule was amended in 2016 to remove electronic filing from the three extra days provided by the "mailbox rule." Fed. R. Civ. P. 6(d) advisory committee's notes (2016 amendment) ("Rule 6(d) is amended to remove service by electronic means under Rule 5(b)(2)(E) from the modes of service that allow 3 added days to act after being served."). Thus, Plaintiff's summary judgment response was not filed timely. Regardless, the court considered the response, as it determined that Defendant suffered no legal prejudice from the brief delay. Accordingly, this argument by Plaintiff does not constitute an exceptional or extraordinary circumstance that would justify allowing him to file a surreply. More importantly, Plaintiff's proposed surreply does not contain any arguments regarding the timeliness of his summary judgment response, so this is not a valid ground warranting the filing of a surreply.

### B. New Legal Arguments and Evidence

Plaintiff next contends that he should be allowed to file a surreply to address new legal theories and new evidence introduced in Defendant's reply, which he did not have an opportunity to address.

"Generally, and for obvious reasons, a reply brief is limited to addressing matters presented by [the movant's] opening brief and by [the respondent's] response brief, and is not the appropriate vehicle for presenting new arguments or legal theories to the court." *AAR, Inc. v. Nunez*, 408 F. App'x 828, 830 (5th Cir. 2011) (internal quotations omitted). "Just as new arguments are inappropriate, it is generally improper for a party to introduce new evidence at the reply stage of a

motion proceeding because the purpose of a reply brief is to rebut the nonmovant's response, not to introduce new evidence." *Robles v. Eminent Med. Ctr., LLC*, 619 F. Supp. 3d 609, 626 (N.D. Tex. 2022) (citations omitted).  The reasoning behind this rule is embodied in this District's Local Civil Rules, which contemplate and permit the filing of an appendix in support of a motion and a response to the motion, but not a reply belief.  *See* N.D. Tex. L. Civ. R. 7.2(e) (appendix may accompany a motion or response, not a reply). Further, "a reply brief that presents dispositive evidence by way of new affidavits and exhibits deprives the nonmovant of a meaningful opportunity to respond." *Lewis v. Southwest Airlines Co*., No. 3:16-CV-1538-M, 2017 WL 879225, at *3 (N.D. Tex. Mar. 6, 2017) (citation omitted).  Thus, the evidence submitted in support of a reply brief must ordinarily be accompanied by a motion for leave.

Plaintiff asserts that Defendant should not be allowed to have the last word. To the contrary, as the movant, this District's Local Civil Rules contemplate that Blue Sprig will and should have the last or final word as long as its reply brief is limited to addressing matters presented in its opening brief and Plaintiff's response and does not contain new arguments or legal theories that were not included in its opening brief or Plaintiff's response.  *See AAR, Inc.*, 408 F. App'x at 830. Plaintiff also fails to explain in his Motion for Leave which legal theories or evidence Defendant introduced for the first time in its reply. As with his summary judgment response, Plaintiff makes conclusory arguments accompanied by recitations of law that are unhelpful because they are not adequately briefed.  It is not incumbent on the court to speculate regarding the legal or evidentiary bases for arguments or discern how the law and evidence referenced supports a litigant's argument. This alone is an independent ground for denying Plaintiff's Motion for Leave to the extent leave is sought to file a surreply to address allegedly new legal argument or evidence.  As discussed below, review of Plaintiff's proposed surreply further supports the court's determination that the Motion for Leave should be denied.

**Memorandum Opinion and Order – Page 35**

### 1. Alleged New Evidence (BACB Code of Ethics)

In his proposed surreply, Plaintiff asserts that the exhibit attached to Defendant's reply—a copy of the BACB Ethics Code—was never previously disclosed to him and should not be considered by the court in determining whether Blue Sprig is entitled to summary judgment on his retaliation claim. As the court has not considered Defendant's evidence regarding the BACB Ethics Code, this does not serve as a justification for allowing Plaintiff to file his proposed surreply.

### 2. Alleged New Legal Arguments or Theories

With respect to his ADA retaliation claim, Plaintiff asserts in his proposed surreply that the temporal proximity between his alleged request for accommodation and the alleged adverse action in the form of Blue Sprig's reporting the July 2021 incident to the BACB supports an inference of causation in connection with his prima facie case of retaliation. In addition, as noted, he takes issue with Defendant's reliance on the BACB Ethics Code because it was not previously produced to him, but he does not contend that Defendant's argument based on this evidence should not be considered without allowing him to address it in a surreply. He instead simply argues, without any citation to evidence, that "Defendant['s] argument that its report to the . . . (BACB) was not retaliatory is unpersuasive. . . . Plaintiff has presented evidence that the report was made in bad faith and was intended to harm his professional reputation." Doc. 23 at 9.

Plaintiff is correct that Defendant mentions the term "causation" for the first time in its reply brief apparently in connection with its argument that Plaintiff has failed to establish a prima facie case of retaliation. The court, however, did not consider this argument or Defendant's inadequately briefed contention that its decision to report the July 2021 incident to the BACB after Plaintiff's resignation does not constitute an adverse action. Likewise, for the reasons already explained, the court did not consider Defendant's argument, based on the BACB Ethics Code, that its decision to report the July 2021 incident to the BACB after Plaintiff's resignation does not

constitute ADA retaliation.  Consequently, any contentions by Plaintiff in this respect do not warrant a surreply by him.  Plaintiff also fails to identify any evidence to support his assertion that he presented evidence that Blue Sprig acted in bad faith with the intention of harming his reputation.

Regarding his failure-to-accommodate claim under the ADA, Plaintiff asserts as follows in his proposed surreply:

> Defendant contends that Plaintiffs failure-to-accommodate claim fails because he did not explicitly link his request to his disability or provide evidence of limitations caused by his condition. This argument misstates the law. Under the ADA, an employer's duty to accommodate is triggered when the employer knows of the employee's disability and the need for accommodation. In this case, Defendant postures itself in its expertise in dealing with learning disabilities. *Picket v. Texas Techis Cnty*, No. 24-10304 (5th Circuit 2024)[;] *Smith v. Har[r]is Cnty.*[,] 4:15-cv-2226[, 2017 WL 11845920] (S.D. Tex[.] 2017 [])[.] Plaintiff informed Defendant of his disability and requested not to work with a specific child due to the impact on his condition.
>
> Defendant[']s failure to engage in the interactive process or provide reasonable accommodations violates the ADA and precludes summary judgment[.] Defendant['s] reliance on *Taylor v. Principal Fin. Group, Inc*., 93 F.3d 155, 164 (5th Cir. 1996), is unavailing. The Fifth Circuit has clarified that the ADA requires employers to accommodate known limitations, not merely disabilities. *See Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242 (5th Cir[.] 2013)[;] *Ball v. LeBlanc*, 792 F. 2[]d [5]84 (5th Cir[.] 2015). Plaintiff[']s evidence that Defendant was aware of his limitations and failed to act creates genuine issues of material fact.

Doc. 23 at 7-8 (cleaned up).

As a preliminary matter, Plaintiff's proposed surreply fails to identify any argument in Blue Sprig's reply that qualifies as a new legal theory or argument as asserted in his Motion for Leave. It is apparent from Plaintiff's proposed surreply that he disagrees with Blue Sprig's reply. This, however, is not grounds for allowing him to file a surreply.

Plaintiff also misstates Blue Sprig's argument based on the Fifth Circuit's opinion in *Taylor*, which discussed the second and third elements of an ADA claim based on failure to accommodate. Contrary to Plaintiff's assertion, Blue Sprig's reply argument based on *Taylor*,

which was discussed at length in its initial brief, *see* Doc. 20 at 11-12, merely responds to and points out the weaknesses in Plaintiff's legal arguments and evidence in relation to the legal standard in *Taylor* that requires employers under the ADA to reasonably accommodate known limitations, not disabilities, and places the burden on an employee who needs accommodation to inform his or her employer that a disability-based limitation exists for which reasonable accommodation is needed. Plaintiff attempts to flip this legal standard on its head by shifting the burden to an employer to ascertain the potential mental limitations of an employee that necessitates reasonable accommodation without any input or request by an employee for accommodation to address a limitation that is within the unique knowledge of the employee. Additionally, the court was unable to locate the Fifth Circuit case "*Picket v. Texas Techis Cnty*, No. 24-10304 (5th Cir[.] 2024)," based on the limited information provided in Plaintiff's proposed surreply.  Thus, for all of the foregoing reasons, allowing Plaintiff to file his proposed surreply with respect to his ADA claim based on failure to accommodate is not warranted.

Finally, Plaintiff asserts in his proposed surreply with respect to his hostile work environment or harassment-based discrimination claim that:

> Defendant argues that Plaintiff[']s hostile work environment claim fails because the alleged conduct was not severe or pervasive and was not based on his disability. To establish a hostile work environment under the ADA, a plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Flower[s] v. S[outhern] Reg'l Physician Servs*[.,] 247 F. 3d. 229[] (5th Cir. 2001)[;] *Patton v. Jacobs Eng'g Grp., Inc*., 874 F. 3d 437 (5th Cir[.] 2017). Plaintiff has presented evidence of repeated instances of harassment and unreasonable work assignments that exacerbated his disability, which a reasonable jury could find severe and pervasive. Defendant[']s assertion that the conduct was not based on Plaintiff[']s disability is contradicted by evidence that Defendant was aware of Plaintiff[']s condition and failed to take steps to address the impact of its actions. This creates a genuine issue of material fact as to whether the harassment was disability-based.

Doc. 23 at 8 (cleaned up).

Once again, instead of identifying any argument in Blue Sprig's reply that qualifies as a new legal theory, this is an improper attempt by Plaintiff to get the last word by responding to Defendant's reply arguments, which were limited to responding to Plaintiff's summary judgment response and pointing out the weaknesses in Plaintiff's arguments and evidence. Additionally, the court has already determined that Plaintiff's evidence is insufficient to raise a genuine dispute of material fact. Plaintiff fails to provide any citations to the record to support his assertion that he "presented evidence of repeated instances of harassment and unreasonable work assignments that exacerbated his disability." *Id.*

Moreover, that Blue Sprig was aware of Plaintiff's disability and autism or Asberger's diagnosis is not evidence that it discriminated against Plaintiff based on his protected status. The court also determined that Plaintiff waived any argument he may have had in this regard by not responding to Defendant's contention that his ADA hostile work environment or harassment-based claim fails because it is not based on his protected status. Having waived this argument by not addressing it in his summary judgment response, Plaintiff cannot now revive it by arguing in a surreply what he could have and should have argued in his summary judgment response. Accordingly, Plaintiff has not demonstrated the type of exceptional or extraordinary circumstances warranting a surreply in connection with his ADA hostile work environment or harassment-based claim or any of his other claims. The court, therefore, **denies** Plaintiff's Motion for Leave (Doc. 23).

## IV.    Plaintiff's Remaining Claims Under the Texas Labor Code

As indicated, Plaintiff's only alleges in passing in the jurisdiction section of his Complaint that he is bringing employment law claims under Texas law. Doc. 1 ¶ 2.1 ("This Court has federal jurisdiction under 28 U.S.C. § 1331, *et seq*., because the claims brought herein arise under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*., and "its State of Texas equivalent,

**Memorandum Opinion and Order – Page 39**

Tex. Lab[or] Code § 21.051, *et seq*.").  Assuming from this allegation that Plaintiff meant to bring claims under the Texas Labor Code, only those claims remain because the court has determined that his ADA claims will be dismissed with prejudice. Pursuant to 28 U.S.C. § 1367,[11] the court has supplemental jurisdiction over these remaining state law claims. The court, however, must decide whether to retain jurisdiction over the remaining state law claims now that it has determined that Plaintiff's federal claims over which it had original jurisdiction, will be dismissed with prejudice.

Supplemental jurisdiction over state law claims is a matter of discretion, not a matter of the plaintiff's right. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). A federal court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims after all federal law claims have been dismissed. See 28 U.S.C. § 1367(c)(3); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). A district court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The court also considers other factors, including judicial economy, convenience, fairness, and comity. *Enochs v. Lampasas Cnty*., 641 F.3d 155, 159 (5th Cir. 2011) (citing *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 (1988), and referring to "judicial economy, convenience, fairness, and comity[ ]" as the "common law factors").

---

[11] Section 1367(a) states: "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

Consideration of the statutory and common law factors weigh in favor of declining to exercise supplemental jurisdiction over Plaintiff's state law claims. As all federal claims by Plaintiff will be dismissed with prejudice, this determination is in keeping with "[t]he general rule . . . that a court should decline to exercise jurisdiction over remaining state-law claims when all the federal-law claims are eliminated before trial[.]" *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). While the amount of time expended by the court on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Leave to File Surreply is significant, this is so only because the parties did not comply with this District's Local Rules for briefing and submission of evidence, and the parties' briefing on these motions, including the citations to legal authority and evidence, was inadequate in many respects. Considerations of judicial economy and convenience still weigh against the court exercising supplemental jurisdiction over the state law claims because the court has not ruled on the merits of these claims or spent any time on them; the bases for these claims appear to be the same but that is not entirely clear given the lack of factual allegations in Plaintiff's Complaint with respect to such claims; and the theories relied on by Plaintiff have evolved and changed during the course of discovery.

Regardless, any state law claims will necessarily dominate the litigation going forward. Though the state law claims do not appear to raise particularly novel or complex issues under Texas law, the law governing any employment discrimination claim under Texas law by Plaintiff will be governed by a different legal standard from Plaintiff's ADA discrimination claims. *See Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 488 (5th Cir. 2004) (discussing the Texas Supreme Court's holding in *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 479-80 (Tex. 2001), and concluding that the "motivating factor" language in § 21.055 of the Texas Labor Code applies to employment discrimination claims based on race, color, sex, national origin, age, and

disability, but not to retaliation claims brought under § 21.055 to which the "but for" standard applies).

Regarding convenience and fairness, nothing in the record suggests it would be less convenient or unfair to litigate the state employment law claims in state court. In this regard, the Fifth Circuit has previously reasoned that "it [is] certainly fair to have [ ] the purely Texas state law claims heard in Texas state court[.]" *See Enochs*, 641 F.3d at 160. Consideration of the last common law factor, comity, also weighs in favor of dismissal, as retaining jurisdiction would disrupt the balance of congressionally approved federal and state judicial responsibilities. *See id.* ("[C]omity demands that the important interests of federalism and comity be respected by federal courts, which are courts of limited jurisdiction and not as well equipped for determination of state law as are state courts.") (internal quotations and citation omitted).

Thus, for all of these reasons, the court **declines** to exercise supplemental jurisdiction over any remaining state law claims that Plaintiff intended to bring in this action, and such claims will be dismissed without prejudice.  Consistent with section 1367(d), the limitations period for any such claim will be tolled for 30 days after dismissal of the claim(s) unless state law provides a longer tolling period.

## V.    Conclusion

For the reasons discussed, Plaintiff has failed to raise a genuine dispute of material fact regarding the matters on which Defendant moved for summary judgment, and Defendant is entitled to judgment as a matter of law on each of Plaintiff's claims under the ADA. The court, therefore, **grants** Defendant's Motion for Summary Judgment (Doc. 19); **denies** Plaintiff's Motion for Leave to File Surreply (Doc. 23); **dismisses with prejudice** all claims by Plaintiff under the ADA for discrimination (failure to accommodate), harassment-based discrimination or hostile work environment, and retaliation based on pre-resignation and post-resignation theories. Further, for

the reasons explained, the court **declines** to exercise supplemental jurisdiction over any remaining state law claims that Mr. Putnam intended to bring in this action under Texas Labor Code § 21.051, *et seq*., and these claims are **dismissed without prejudice**.

      **It is so ordered** this 4th day of March, 2026.


Sam A. Lindsay
United States District Judge